**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>SEMCRUDE, L.P., <u>et al.</u>,<br><br>　　　　　Debtors. | ) CHAPTER 11<br>)<br>) Case No. 08-11525 (BLS)<br>)<br>) (Plan Confirmed)<br>)<br>)<br>) |
| IN RE:<br><br>SEMGROUP HOLDINGS, L.P.,<br><br>　　　　　Debtor. | )<br>)<br>) Case No. 08-12504 (BLS)<br>)<br>) Related to Docket No. 253<br>)<br>)<br>) |

**OPINION**[1]

　　Before the Court is a substantive claims objection (the "Objection") filed by debtors SemGroup, L.P. ("SemGroup") and SemGroup Holdings, L.P. ("SemGroup Holdings" and collectively with SemGroup, the "Debtors"). The Debtors object to four proofs of claim (the "Claims") filed by Harvest Fund Advisors ("Harvest"), and argue that Harvest's claims should be subordinated pursuant to Bankruptcy Code section 510(b). Because section 510(b), by its plain terms, does not apply to the Claims, the Court will overrule the Debtors' Objection.

---

[1]　This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Civil Procedure 7052.

-1-

## I. BACKGROUND

The Debtors, together with certain related entities, filed voluntary petitions for Chapter 11 relief on July 22, 2008. At or around that time, Harvest and other parties filed putative class action lawsuits in federal district courts in New York and Oklahoma alleging damages arising from the purchase of shares of SemGroup Energy Partners, L.P. ("SGLP"), a non-debtor limited partnership in SemGroup's corporate family. Those lawsuits were consolidated for pre-trial purposes, and Harvest was appointed lead plaintiff in the consolidated action (the "Securities Action").[2]

On its own behalf and on behalf of a class of purchasers of SGLP securities, Harvest timely filed proofs of claim in the Debtors' bankruptcy case. Harvest asserts claims of at least $400 million against each of SemGroup and SemGroup Holdings on behalf of the putative class, and approximately $7.3 million against the same entities on Harvest's own behalf.

On April 30, 2010, the United States District Court for the Northern District of Oklahoma denied motions to dismiss filed by SGLP and certain other defendants.[3] On May 7, 2010, the Debtors filed the Objection.

---

[2]  See In re SemGroup Energy Partners, L.P., Securities Litigation, Case No. 08-MD-1989-GKF-FHM (N.D. Okla.).

[3]  See Opinion and Order, Case No. 08-MD-1989-GKF-FHM (N.D. Okla. Apr. 30, 2010)[Docket No. 253].

Bankruptcy Code section 510(b) is the Objection's primary stated basis for relief.[4]  Under that section, claims for damages arising from the purchase or sale of a security of the Debtor or its affiliates are subordinated to general unsecured claims.  The Debtors argue that Harvest's claims fall squarely within 510(b)'s purview.  Harvest argues that section 510(b) is inapplicable because its claim does not arise from the purchase or sale of the securities of a Debtor or one of its affiliates, and that though the claim indisputably arises from the purchase or sale of a security, SGLP is not an affiliate of the Debtors under the Code's definition of "affiliate."

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(B).

---

[4]  The Reply brief also argues that equitable subordination under section 510(c) would be appropriate, but Third Circuit law holds, and Debtors' counsel acknowledged at argument, that equitable subordination requires a showing of a claimant's inequitable conduct.  See Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Claims, 160 F.3d 982, 986-87 (3d Cir. 1998).  No such showing was made here.

### III. **DISCUSSION**

A properly filed claim is deemed allowed unless a party in interest objects, at which point the court must determine the amount of the claim to be allowed.  See 11 U.S.C. § 502(a),(b). "A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim," and the burden is thereafter upon the objector to refute that evidence. Fed. R. Bankr. P. 3001(f).

The basis of the Debtors' objection is section 510(b), which provides, in relevant part, as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, [or] for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such a security.

11 U.S.C. § 510(b).

If applied to Harvest's claims, section 510 would operate to subordinate the claims to those of general unsecured creditors, placing Harvest at the end of the distribution line with other equity holders.  Harvest argues, however, that section 510 does not apply because Harvest's claims for damages do not arise from "the purchase or sale of a security of the debtor or of an

affiliate of the debtor," because SGLP is not a debtor, and is not an "affiliate" as defined by the Code.

Whether an entity is an "affiliate," depends, of course, upon the structure of the relevant entity's corporate family. SGLP is a limited partnership. Its general partner and 2% owner is SemGroup Energy Partners G.P., L.L.C. ("SemGroup GP"), which is not a debtor. Semgroup GP is wholly owned by SemGroup Holdings, which is, in turn, wholly owned by SemGroup. SemGroup Holdings and SemGroup are both debtors in these Chapter 11 proceedings.

"Affiliate" is defined in section 101(2) to include four types of entities. Two of the four are not alleged to have any application here. Subsection (A) includes entities that own large portions of a debtor. SGLP does not, so that subsection plainly does not apply. Subsection (D) is likewise inapplicable: the Debtors have introduced no evidence that SGLP "operates the business or substantially all of the property of the debtor under a lease or operating agreement," as is required of an affiliate under that section.

Subsection (B), in relevant part, defines "affiliate" to include the following: "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor. . . ." This is the subsection upon which SemGroup's objection is based.

affiliate of the debtor," because SGLP is not a debtor, and is not an "affiliate" as defined by the Code.

Whether an entity is an "affiliate," depends, of course, upon the structure of the relevant entity's corporate family. SGLP is a limited partnership. Its general partner and 2% owner is SemGroup Energy Partners G.P., L.L.C. ("SemGroup GP"), which is not a debtor. Semgroup GP is wholly owned by SemGroup Holdings, which is, in turn, wholly owned by SemGroup. SemGroup Holdings and SemGroup are both debtors in these Chapter 11 proceedings.

"Affiliate" is defined in section 101(2) to include four types of entities. Two of the four are not alleged to have any application here. Subsection (A) includes entities that own large portions of a debtor. SGLP does not, so that subsection plainly does not apply. Subsection (D) is likewise inapplicable: the Debtors have introduced no evidence that SGLP "operates the business or substantially all of the property of the debtor under a lease or operating agreement," as is required of an affiliate under that section.

Subsection (B), in relevant part, defines "affiliate" to include the following: "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor. . . ." This is the subsection upon which SemGroup's objection is based.

SGLP is not a corporation, however, and section 101(2)(B) is limited to corporations.  The Bankruptcy Code's definition of "corporation" explicitly excludes limited partnerships: "The term corporation . . . does not include limited partnership."  11 U.S.C. § 101(9)(B).  Subsection (B) does not apply.

The final definition of "affiliate," found in subsection (C), includes a "person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor."  11 U.S.C. § 101(2)(C).  In their reply brief, the Debtors argue for the application of this subsection, noting that "[t]he Bankruptcy Code provides that 'person' includes 'partnerships,' which courts have recognized includes limited partnerships."  (Reply ¶ 1)[Docket No. 260].  The Debtors have failed to demonstrate, however, that SGLP's business or substantially all of SGLP's property is operated under a lease or operating agreement by a debtor.  No lease or operating agreement was introduced into evidence in connection with the Objection.  The only agreement mentioned -- in hearings before the Court, and obliquely in the briefs -- is a partnership agreement that purportedly exists between SGLP and SemGroup GP.  Even if this agreement were introduced into evidence, it likely would not satisfy section 101(2)(C)'s definition of "affiliate," because even if the Debtors could show that the partnership agreement is

a lease or operating agreement, the agreement is between two non-debtors.

The Debtors argue that SGLP is an affiliate because Harvest's "own allegations in [the Claims] and [Securities Actions] . . . operate as binding admissions that SGLP's business 'is operated under a lease or operating agreement by a debtor, or substantially all of its property is operated under an operating agreement with the debtor.'" (Reply ¶ 11).  The proofs of claim refer to SGLP as "a non-debtor affiliate of the Debtors," and allege that "the Debtor created and controlled SGLP."  See, e.g., Proof of Claim 4868, p. 2 ¶ 3; Proof of Claim 5971, p. 2 ¶ 3.  In addition, Harvest has alleged in the Securities Action that "SemGroup Holdings controls SGLP through its 100% ownership interest in SGLP's General Partner."  Consolidated Compl. ¶ 57, Case No. 08-MD-1989-GKF-FHM (N.D. Okla.).

The Debtors cite In re Basin Resources Corporation, 190 B.R. 824 (Bankr. N.D. Tex. 1996), as an instance where a court found that a party's allegations and admissions in a pending securities action may be binding for purposes of subordination under section 510(b).  In that case, the claimant entered into a joint venture with a debtor.  The joint venture was operated under a joint venture agreement, which provided that the debtor was the joint venture manager and would have "full, exclusive and complete charge of all affairs" of the joint venture.  Id. at 825.  Like

the present case, the claimant also filed a federal securities lawsuit in which he alleged that the debtor was manager and operator of the joint venture. <u>Id.</u> at 826.  The bankruptcy court found, based on the joint venture agreement and the claimant's own admissions in the securities action, that the joint venture was an "affiliate" of the debtor which controlled it for purposes of subordination under section 510.

Notably, the claimant's judicial admissions were not the sole basis upon which the court's holding rested.  There was a contract between the debtor and the alleged affiliate which provided an independent and sufficient basis to find that the joint venture was an affiliate of the debtor.  Here no such basis exists: there is no operating agreement or lease between the alleged affiliate and a debtor, as required by section 101(2)(C).

Further, concerning the admissions made in the Securities Actions, there is support in this Circuit suggesting that admissions made in separate proceedings are non-binding and non-conclusive.  <u>See</u> <u>In re Woskob</u>, 2001 U.S. Dist. LEXIS 13749, *10-11 (M.D. Pa. 2001)("Even if the [statement in a prior bankruptcy petition] was a judicial admission, it was neither binding nor conclusive because it was a part of . . . a completely separate legal proceeding."), <u>vacated on other grounds</u>, 305 F.3d 177, 188 (3d. Cir. 2002).  Concerning Harvest's use of the word "affiliate" in its proofs of claim, a party may use a word in one

context without necessarily intending its precise legal meaning in another context.  SGLP may indeed be an "affiliate" as the term is used in common speech, or for purposes of state corporate law, and yet not be an affiliate for purposes of section 510(b).

There is also support in this Circuit for the principle that "judicial admissions are restricted in scope to matters of fact . . . .  A legal conclusion -- e.g., that a party was negligent or caused an injury -- does not qualify [as] a judicial admission." In re Pittsburgh Sports Assocs. Holding Co., 239 B.R. 75, 81 (Bankr. W.D. Pa. 1999), vacated on other grounds, 1999 Bankr. LEXIS 1872 (Bankr. W.D. Pa. 1999).

Other courts have found entities not to be affiliates of debtors on facts similar to those before the Court.  For example, in In re Maruki USA Co., 97 B.R. 166, 169 (Bankr. S.D.N.Y. 1988), as here, there was an intervening general partner between the debtor and the alleged affiliate entity.  The court rejected the argument that an entity is rendered an affiliate of a debtor where it is 50% owned by its general partner, which is wholly owned and controlled by a debtor.  Id.  The court was not persuaded to ignore section 101(2)'s plain meaning despite legislative history suggesting "Congress' intent to include within the definition of affiliate an entity that has control over and has a close relationship with the debtor."  Id.

The Debtors argue that their Objection is also supported by the policy underlying section 510, which is to ensure that a debtor's creditors are repaid before its equity holders. (Reply ¶ 23). The Third Circuit confirms that "Section 510(b) thus represents a Congressional judgment that, as between shareholders and general unsecured creditors, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy." In re Telegroup, Inc., 281 F.3d 133, 141 (3d Cir. 2002). See also In re VF Brands, Inc., 275 B.R. 725, 728 (Bankr. D. Del. 2002)(explaining that Congress intended section 510 to prevent equity holders from getting "the best of both worlds"-- equity's upside potential and creditors' downside protection).

Despite Congress's obvious intent, the Court is constrained by the plain meaning of the statute where that meaning is unambiguous. See Robinson v. Shell Oil Co., 519 U.S. 337, 340, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997)("[The] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). "[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000). The

Debtors have not identified any relevant ambiguity in the text of sections 510(b) or 101(2) which would allow the Court to look beyond the terms of the relevant statutes.

## IV. **CONCLUSION**

SGLP is not an affiliate as defined by section 101(2).  The Debtors have not carried their burden of demonstrating that Harvest's claims should be subordinated pursuant to section 510(b).  Accordingly, the Debtors' Objection will be overruled.

An appropriate order follows.

By the Court,

_____
Dated: July 16, 2010            Brendan Linehan Shannon
                                United States Bankruptcy Judge